Att. "A"

In 2014, the above-named Plaintiff, while serving a prison sentence at Montana State Prison, met a correctional officer by the name of Nichole Dyer.

Shortly after this meeting, and to the suprise of the Plaintiff, Mrs. Dyer began attempting to initiate a relationship with the Plaintiff.

Yet the Plaintiff after serving many years in custody. Although tempted by Dyer's advances, resisted Dyer's advances, because the Plaintiff was trying to overcome long-term gang and drug problems. Problems that have left the Plaintiff's life completely destroyed.

Thus Mrs. Dyer, after many advances towards the Plaintiff eventually realized the Plaintiff's un-willingness to engage in a relationship with her, she began to engage in relationships with other inmates.

Mrs. Dyer's attempts to engage in relationships eventually resulted in Mrs. Dyer being caught in 2016 for engaging in relationship and providing a cellphone to an inmate in Montana State Prison, and being charged with engaging in a relationship with an inmate, and providing said inmate with a cellphone.

In 2019 Mrs. Dyer was convicted of engaging in a relationship with an inmate, and providing a communication device to an inmate.

Despite Mrs. Dyer's felony conviction and the facts of Mrs. Dyer's conviction in 2023 Mrs. Dyer was hired as a counsler for a privately owened D.O.C. treatment facility called the Recovery Center of Montana (RCM). A for profit limited liability company. As well shortly after Mrs. Dyer's conviction, the Plaintiff was released from Montana

Att. "A"

State Prison.

Shortly after the Plaintiff's release from prison, the Plaintiff being unprepared to enter society, even after years of incarceration, eventually began "using" drugs again. Yet feeling drug usage to only be a gateway to greater issues the Plaintiff engaged his Parole officer (P.O.) about the Plaintiff checking his self into a treatment center.

The Plaintiff's P.O. Tom Kissle recommended to the Plaintiff that he attend the R.C.M. facility. P.O. Kissle was specifically informed by the Plaintiff that the Plaintiff did not want to have any contact with Mrs. Dyer. As the Plaintiff felt that part of his behavioral issues resulted directly from volatile relationships with women. As well the Plaintiff was concerned of Mrs. Dyer's known current relationship status with several inmates in Montana State Prison, and that Mrs. Dyer may inform these inmates of the Plaintiff's whereabouts. Which may result in "interference" by these inmates with the Plaintiff's attempts to "straighten himself out".

Based on the Plaintiff's concerns, P.O. Kissle contacted R.C.M., and then informed the Plaintiff that Mrs. Dyer had no contact with inmates. Based on this information the Plaintiff agreed to self check himself into R.C.M. The Plaintiff did so after fully informing the Plaintiff's D.O.C. contact (P.O Kissle), the R.C.M facility and in staff of the Plaintiff's for his rehabilitation not wanting any contact with Mrs. Dyer.

Despite all of the above reassurance, within days of the Plaintiff's arrival, Mrs. Dyer made contact with

Att "A"

the Plaintiff, and began pressuring the Plaintiff to engage in a relationship with her. Yet as before the Plaintiff resisted and resistance must have upset Mrs. Dyer, and Mrs. Dyer even thought the Plaintiff had directly informed the D.O.C. and R.C.M. status of the Plaintiff wanting complete privacy called the Plaintiff into her private office, and while in her private office, expected calls from the Montana State Prison from inmates (on recorded phone lines), which due to the Plaintiffs fragile emotional state, The Plaintiff wanted no contact with, and informed these inmates of the Plaintiffs he is in her office at that moment. This breech of the Plaintiffs H.I.P.P.A. and right to privacy in his treatment left the Plaintiff feeling extremely vulnerable. Like no matter what the Plaintiff did he would never escape the lifestyle he felt he could no longer, mentally or physically, handle.

Yet the Plaintiff continued to attempt to strive towards treatment for his drug issue, and a separation from past gang and criminal ties. The Plaintiff had children that he wanted to raise, and was already engaged in a relationship with his childs mother and the Plaintiff clung to this relationship as it was the only stable, drug free, and normal part of his life. Apart he hoped his treatment would help him gain a greater growth in.

Yet this stubburness of the Plaintiff only seemed to strengthen Dyer's resolve to engage in a relationship with the Plaintiff, and in support of this resolve. Mrs. Dyer began controlling the Plaintiff's communications with the outside world. Telling the Plaintiff that if he

wanted contact with the outside world he would need to use her cellphone to do so. This eventually led to Dyer exercising more and more control over the Plaintiff. The Plaintiff coming off of drugs was of course extremely vulnerable. Dyes picked up on this vulnerability eventually began to sneak drugs to the Plaintiff. The Plaintiff's resolve completely dissolved, and the Plaintiff began engaging in a sexual relationship with Dyer. Dyer's complete destruction of the mentally vulnerable Plaintiff was complete.

Dyer's destruction eventually led to her contacting the Plaintiff's childs mother, and attempting to get her to leave the Plaintiff to Dyer only.

As well Mrs. Dyer began taking the Plaintiff on what she called "road trips". Trips in which Dyer and the Plaintiff would engage in sexual intercourse. These trips became so outlandishly obvious staff members began making complaints. These complaints eventually resulted in a bored review of Mrs. Dyes, but once again Mrs. Dyer's obvious disregard for policy was ignored and Mrs. Dyer continued to engage the Plaintiff.

Dyer's actions deprived the Plaintiff of treatment he desperately needed, and resulted in severe brain washing by a sexual predator. Anyone with knowledge of Dyer's actions would clearly urge that her actions of sexually preying on the vulnerable Plaintiff was cruel and unusual punishment to a criminal level, and the fact that the D.O.C. allowed Mrs. Dyer after already being caught to continue to sexually seek out new victims is the Montana Department of Corrections "feeding" Mrs. Dyers with new victims. The Plaintiff had informed his P.O. of his

Att. "A"

concerns, and the instant a D.O.C. employee knew of a sexual predator already convicted of praying on inmates working at a D.O.C. said parole officer should have immediately moved to have Mrs. Dyer fired.

Furthermore, Defendant Joe Driscoll's policies of allowing such a person to be hired at his facility directly lead to the Plaintiff being harmed.

The Plaintiff only wanted treatment for his drug addictive issues, and the Defendant's action not only allowed a sexual predator to force the Plaintiff into a sexual relationship but as well allowed said sexual predator to provide drugs to a drug addict. At said drug addicts lowest and most vulnerable point. The Beginning of treatment. The Defendant could not have been so niave as to believe Mrs. Dyer would not harm people she had contact with, and that harm has lead to even more severe mental health issues for the Plaintiff.

All this amounts to a severe violation of the Plaintiffs constitutional expectations of a safe treatment enviroment.