IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| CHAD SUN GOOD GUN,<br><br>Plaintiff,<br><br>vs.<br><br>JIM DRISCOLL, TOM KISSLE, MONTANA DEPARTMENT OF CORRECTIONS, RECOVERY CENTERS OF AMERICA, RECOVERY CENTERS OF MONTANA,<br><br>Defendants. | CV 24-04-H-DWM<br><br><br>ORDER |

Plaintiff Chad Sun Good Gun ("Good Gun"), a convicted state prisoner proceeding in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 2.) Good Sun is currently incarcerated at the Lewis and Clark County Detention Center. (*Id.* at 2). He generally alleges Defendants violated his right to be free from cruel and unusual punishment and failed to protect him when they allowed him attend chemical dependency treatment knowing a sexual predator was employed at the facility. (*Id.* at 4-5.)

I. STATEMENT OF THE CASE

A.  Parties

In his Complaint, Good Gun names: Tom Kissle, his parole officer; Recovery Centers of America/Montana, a for-profit limited liability company

1

operating private treatment centers affiliated with the Montana Department of Corrections; Jim Driscoll, co-founder and CEO of Recovery Centers of Montana; and the Montana Department of Corrections. (*Id.* at 2-3); *see also* (Doc. 2-1 at 1, 5.) Good Gun names Kissle and Driscoll in their individual capacities and the entity defendants in their official capacities. (Doc. 2 at 2-3.)

B.   **Allegations**

Good Gun alleges that in March of 2023, with the assistance of his parole officer, Kissle, he arranged treatment at Recovery Center of Montana to obtain chemical dependency counseling for his drug use. (Doc. 2 at 4); (Doc. 2-1 at 2.) Prior to entering the facility, Good Gun advised Kissle that he was concerned a former Montana State Prison guard, Nichole Dyer, with whom he was familiar from a prior prison term, was employed at Recovery Center of Montana. Good Gun was aware that Dyer has been convicted of criminal offenses for engaging in a sexual relationship and providing a cellphone to an inmate while she was employed at Montana State Prison. (Doc. 2-1 at 1.) Good Gun also advised Kissle that Dyer had unsuccessfully attempted to have a relationship with him while he was an inmate. (*Id.* at 2.) Kissle apparently contacted Recovery Center of Montana and was told that Dyer had no contact with inmates. Based upon this information, Good Gun agreed to check himself into the facility; both Kissle and

2

treatment center staff were aware that Good Gun did not wish to have contact with Dyer. (*Id.*)

Within days of arriving at the facility, Dyer contacted Good Gun and began pressuring him to engage in a relationship. (*Id.* at 2-3.) When Good Gun resisted her advances, she called him into her private office and accepted phone calls from prison inmates with whom Good Gun wanted no contact. (*Id.* at 3.) She informed the prison inmates that Good Gun was present; he believes this violated his right to privacy and also made him feel extremely vulnerable. While Good Gun continued his treatment, Dyer continued her attempts at engaging in a relationship. (*Id.*) Dyer began controlling his communications with the outside world, telling him that if he wanted to make contact with others he would need to use her cell phone. (*Id.* at 3-4.) Dyer's exertion of control over Good Gun ultimately led to her sneaking him drugs. Good Gun's resolve at treatment dissipated and he began a sexual relationship with Dyer. (*Id.* at 4.)

Dyer's control led to her attempting to break up Good Gun's relationship with the mother of his children and even taking him on unsupervised "road trips" during which the two would engage in sexual intercourse. (*Id.*) The relationship became obvious and resulted in other staff members making complaints which led to Dyer's review. Undeterred, Dyer continued to ignore policy and engage in relations with Good Gun. (*Id.*)

3

Good Gun believes Dyer's acts deprived him of treatment and resulted in severe brainwashing by a sexual predator. He claims her acts demonstrate cruel and unusual punishment and the Montana Department of Corrections tacitly allowed her to seek out new victims. (*Id.*) Good Gun believes Kissle should have immediately moved to have Dyer fired. (*Id.* at 4-5.) Further, Good Gun asserts that Driscoll, by allowing Dyer to be employed at his facility, was complicit in the harm. (*Id.* at 5.) These actions led to a sexual predator forcing Good Gun into a sexual relationship and providing drugs to him. Driscoll should have known Dyer's behavior would have inflicted mental health issues upon Good Gun. This violated Good Gun's constitutional expectations of a safe treatment environment. (*Id.*)

Good Gun alleges he now suffers from a lifelong mental disorder and seeks $1.5 million in compensatory damages. (Doc. 2 at 5.) He additionally seeks $3 million for "untreatable damages," $3 million for being subjected to an environment of cruel and unusual punishment, and $3 million due to the Montana Department of Corrections inability to properly screen people that come into contact with inmates. (*Id.*)

## II.   SCREENING PURSUANT TO 28 U.S.C. § 1915, 1915A

### A. Legal Standards

Because Good Gun is a prisoner suing a governmental entity, his Complaint is subject to screening under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A. These statutes require the Court to review a prisoner's complaint and dismiss it or portions thereof before it is served upon the defendants if it finds that the complaint is "frivolous," if it "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune." A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must set forth "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell*, 550 U.S. at 555). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* at 94; *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

**B. Analysis**

5

Good Gun indicates he intends to proceed under 42 U.S.C. § 1983. (Doc. 2 at 3.) This statue provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To prove a violation under § 1983, Good Gun must establish: (1) defendants' conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) defendants committed the act under color of state law. 42 U.S.C. § 1983.

**C. Allegations**

Although Good Gun makes no reference to a specific constitutional provision or federal law, it appears he intends to proceed under the Eighth Amendment, given his references to cruel and unusual punishment. Construing his complaint liberally, he also may intend to advance a supervisory liability claim.

**1. Eighth Amendment**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F. 3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citations omitted).

**a. Sexual Abuse**

Good Gun alleges he was sexually assaulted by Dyer, although he fails to name her as a defendant. "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Wood v. Beauclaim*, 629 F. 3d 1041, 1046 (9th Cir. 2012). "[A] prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Coban*, 947 F. 3d 1130, 1144 (9th Cir. 2020). Whild Good Gun has included specific facts to support a potential allegation of an ongoing sexual assault that began in March of 2023, he has not named a defendant that engaged in the purported sexual abuse. Thus, Good Gun has not pled a valid claim of sexual abuse.

### b. Failure to Protect

Good Gun also seems to allege that defendants failed to protect him, in violation of the Eighth Amendment. Correctional officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of others because being assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). In order to state a plausible Eighth Amendment claim for relief,

however, a Plaintiff must allege facts sufficient to show that Defendants acted with 'deliberate indifference.'" *Castro v. Cnty. of L.A.*, 833 F. 3d 1060, 1068 (9th Cir. 2016). "A prison official acts with 'deliberate indifference…only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F. 3d 1051, 1057 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837.)

Good Gun provides conclusory statements regarding defendants' collective failure to protect him. Good Gun must provide facts to show that defendants knew of a risk presented to him and then explain what they did or failed to do that shows they disregarded an excessive risk to his health and/or safety. Even liberally construing the complaint, Good has not alleged facts to show that any defendant acted with deliberate indifference.

### 2. Supervisory Liability

It also appears that Good Gun may be attempting to bring a supervisory liability claim against Kissle and Driscoll based upon a failure to adequately supervise Dyer. To do so, Good Gun must first state an underlying constitutional violation that gives rise to supervisory liability. A supervisor can only be held individually liable for (1) his "own culpable action or inaction in the training,

supervision, or control of his subordinates"; (2) "his acquiescence in the constitutional deprivations of which the complaint is made"; or (3) his conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F. 3d 1202, 1205-06 (9th Cir. 2011) (quoting *Larez v. City of LA*, 946 F. 2d 630, 646 (9th Cir. 1991)). Allegations against supervisors which resemble "bald" and "conclusory" allegations should be dismissed. *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012). Allegations that a supervisory defendant had personal knowledge of a constitutional violation are insufficient without "specific allegations regarding each Defendant's purported knowledge" of the violation. *Id.* at 942. A plaintiff must allege "sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Id.* (citing *Starr*, 652 F.3d at 1206–07).

Good Gun's complaint does not allege any specific facts, aside from his own conclusions, concerning Kissle or Driscoll's action or inaction relative to Dyer or explain how either of the acquiesced in any constitutional deprivation. Accordingly, to the extent that Good Gun is attempting to raise a supervisory liability claim, as currently plead, it is subject to dismissal.

### D. Defendants

Under 42 U.S.C. § 1983, a plaintiff may sue an individual person or a municipal entity, such as a county or a city. To sue an individual, Good Gun must

9

explicitly link up a federal law, such as the Eighth Amendment, with specific acts by specific defendants whom he believes violated that law. As set forth above, § 1983 imposes individual liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). This can be established in two ways. First, an individual can be held liable for their own personal acts which directly cause an injury. But in order to make such a claim, a plaintiff must make specific factual allegations regarding what each defendant did or did not do.

"[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d 1202. Section 1983 will not impose liability on supervising officers under a respondeat superior theory of liability. *Monell,* 436 U.S. at 691-94. That is, a defendant cannot be held liable just because they supervise other employees. Instead, supervising officers can be held liable under § 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987). The showing necessary to establish a valid supervisory liability claim has been explained in the above section.

A plaintiff may seek injunctive relief, which requires a state actor to act or stop acting in a particular manner. A claim for injunctive relief against a state

actor must name the state official in charge of such acts as a defendant and specify that they are being sued in their official capacity. *Ex parte Young*, 209 U.S. 123, 167-68 (1908). A plaintiff also may seek monetary damages from a state actor, by naming a state official as a defendant and specifying that they are being sued in their individual capacity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). An individual capacity claim seeks to hold a state actor personally liable for unlawful action taken while acting in the course and scope of their government employment. As set forth above, Good Gun names Kissle and Driscoll in their individual capacities and the remaining defendants in their official capacities. It appears, however, that Good Gun seeks only monetary and not injunctive relief.

To the extent that Good Gun seeks injunctive relief, he must name one or more defendants who are responsible for the harm alleged and the complaint must state they are being sued in their *official capacity* for any claim for injunctive relief. *Ex parte Young*, 209 U.S. at 167-68. With respect to his claims for monetary damage, Good Gun must name as a defendant one or more defendants who are responsible for the harms alleged. The complaint must state that the defendant or defendants are being sued in their *individual capacity* for any claim for damages Good Gun seeks. *Graham*, 473 U.S. at 165.

Finally, the Eleventh Amendment bars suit in federal court against a state and/or a state agency absent a valid abrogation of immunity by Congress or an

11

express waiver of immunity by the State. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–268 (1997); *Edelman v. Jordan*, 415 U.S. 651, 653 (1974); *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The State of Montana has waived immunity only for tort claims brought in state court. Mont. Code Ann. §§ 2-9-101, et seq. Hence any claim against the State of Montana or any agency of the State, including the Montana Department of Corrections, cannot be brought in federal court.

## III. CONCLUSION

28 U.S.C. §§ 1915 and 1915A require the dismissal of a complaint that fails to state a claim upon which relief may be granted but do not deprive the district court of its discretion to grant or deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The Court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (*citing Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

As currently pled, Good Gun fails to state a claim upon which relief may be granted and his complaint is subject to dismissal. Yet it may be possible to cure

the defects with Good Gun's claims. Accordingly, Good Gun will be given an opportunity to file an amended complaint to clarify his factual allegations and the specific defendants involved, to provide more specific allegations regarding his claims, and to provide specific factual allegations against each named defendant.

### A. Amended Complaint

Any amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint by reference. Once Good Gun files an amended complaint, it replaces the original complaint, and the original complaint no longer serves a function in the case. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). If Good Gun fails to use the court-approved form, the Court may strike the amended complaint and recommend the dismissal of this action. Good Gun may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir.2007).

Any amended complaint must consist of short, plain statements telling the Court: (1) the rights Good Gun believes were violated; (2) the name of the defendant(s) who violated the rights; (3) exactly what <u>each</u> defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Good Gun's rights; (5) when the alleged actions took place; and (6) what injury

13

Good Gun suffered because of that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Good Gun must repeat this process for each defendant. Conclusory statements are not enough, nor are declarations that all defendants violated some law or statute. Instead, Good Gun must provide specific factual allegations for each element of each of his claims and must state with specificity to which defendants each of his claims apply. If Good Gun fails to affirmatively link the conduct of a defendant with an injury suffered, the allegation against that defendant will be dismissed for failure to state a claim.

### B. Possible Dismissal

If Good Gun fails to timely comply with every provision of this Order, this action may be dismissed. *Ferdik*, 963 F.2d at 1260-61 (court may dismiss an action for failure to comply with any order of the court).

### C. Address Change

At all times during the pendency of this action, Good Gun must immediately advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based upon the foregoing, IT IS ORDERED that:

1. Good Gun's complaint is DISMISSED. Within **30 days** of this Order,

Good Gun may file an amended complaint that attempts to cure the deficiencies.

2. Failure to comply with this Order will result in dismissal of all claims without further notice to Good Gun.

3. The Clerk of Court is directed to provide Good Gun with an Amended Complaint form so that he may comply with the directions of this Order.

4. <u>Good Gun must immediately notify the Court of any change in his mailing address</u> by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this case without notice to him.

DATED this 27th day of June, 2024.

Donald W. Molloy, District Judge
United States District Court